Filed 7/30/26  Tseng v. Hydrafacial CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JULIE TSENG, Plaintiff and Respondent, v. HYDRAFACIAL, LLC et al., Defendants and Appellants. | B344412 (Los Angeles County Super. Ct. No. 23STCV15192) |

---

APPEAL from an order of the Superior Court of Los Angeles County, Steve Cochran, Judge.  Reversed.

CDF Labor Law, Todd R. Wulffson, Ashley A. Halberda, Alessandra C. Whipple, Osaama Saifi and Jefferson Cha for Defendants and Appellants.

Law Offices of G. Samuel Cleaver and G. Samuel Cleaver for Plaintiff and Respondent.

———————————

## INTRODUCTION

Defendants Hydrafacial, LLC, Edge Systems Corporation, and The Beauty Health Company (collectively, Hydrafacial), along with Peter Kim, appeal the trial court's order granting plaintiff Julie Tseng's motion to vacate a prior order compelling Tseng's claims against them to arbitration. The trial court granted the motion pursuant to Code of Civil Procedure[1] section 1281.98 for Hydrafacial's failure to pay arbitration fees by the deadline imposed by the statute.

After the trial court ruled, our Supreme Court issued *Hohenshelt v. Superior Court* (2025) 18 Cal.5th 310 (*Hohenshelt*), which interpreted section 1281.98 to allow a party's breach of the payment requirement to be excused under equitable principles. Appellants contend Hydrafacial's breach, which involved a payment that was late by three business days and did not impact the on-going arbitration proceeding, should be excused under *Hohenshelt*.

We agree and reverse.

## SECTION 1281.98 AND *HOHENSHELT*

Section 1281.98 is a provision in the California Arbitration Act (CAA; § 1280 et seq.) "that governs the payment of fees in employment and consumer arbitrations . . . [and] establishes a default rule that when the party who drafted an arbitration agreement is responsible for paying fees and costs to an arbitrator, that party must pay an arbitrator's invoice 'within 30 days after the due date' (§ 1281.98, subd. (a)(1)), and 'the

---

[1] Unspecified statutory references are to the Code of Civil Procedure.

arbitration provider shall issue all invoices to the parties as due upon receipt' (*id.*, subd. (a)(2)).  The parties may contract around the default rule by specifying in their agreement 'the number of days in which the parties to the arbitration must pay any required fees or costs' or by agreeing to an 'extension of time for the due date.'  (*Ibid.*)  If the drafting party fails to make timely payment, it 'waives its right to compel the employee or consumer to proceed with that arbitration' (*id.*, subd. (a)(1)), and the employee or consumer may choose to '[w]ithdraw the claim from arbitration' and proceed in court (*id.*, subd. (b)(1)) or '[c]ontinue the arbitration' if the arbitrator agrees (*id.*, subd. (b)(2))."[2] (*Hohenshelt*, *supra*, 18 Cal.5th at p. 322.)

The issue in *Hohenshelt* was "whether the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) preempts" section 1281.98.  (*Hohenshelt*, *supra*, 18 Cal.5th at p. 322.)  Under

---

[2] Under section 1281.99, if "[the] drafting party . . . materially breaches an arbitration agreement pursuant to . . . subdivision (a) of [s]ection 1281.98," the court "shall . . . order[ that] party to pay the reasonable expenses, including attorney's fees and costs, incurred by the employee or consumer as a result of the material breach," and "may order" an evidence, terminating or contempt sanction against that party "unless the court finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust."  (§ 1281.99, subds. (a), (b).)  In addition, "If the employee or consumer withdraws the claim from arbitration and proceeds in . . . court . . . [¶] (1) [they] may bring a motion, or a separate action, to recover all attorney's fees and all costs associated with the abandoned arbitration proceeding[, and] . . . [¶] (2) [t]he court shall impose sanctions on the drafting party in accordance with [s]ection 1281.99."  (§ 1281.98, subd. (c)(1), (2).)

section 2 of the FAA, a written arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  (9 U.S.C. § 2.) "This provision establishes ' "an equal-treatment principle: A court may invalidate an arbitration agreement based on 'generally applicable contract defenses' . . . but not on legal rules that 'apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.' " ' " (*Hohenshelt*, at p. 341.)  A key argument for preemption was "that outside of section 1281.98, the question of whether a party has materially breached or substantially performed its contractual obligations is subject to case-by-case factual determination . . . [whereas section 1281.98] uniquely penalizes trivial delays in performance."  (*Hohenshelt*, at p. 343.)

The court began its analysis by construing section 1281.98. Courts of Appeal had previously interpreted the statute to "impose[] an inflexible rule that deems any failure to make timely payment a material breach, regardless of circumstances, with the automatic consequence that the drafting party loses its arbitral rights."  (*Hohenshelt*, *supra*, 18 Cal.5th at p. 331.)  The court "reject[ed] that rigid construction and instead conclude[d] that the statute does not abrogate the long-standing principle, established by statute and common law, that one party's nonperformance of an obligation automatically extinguishes the other party's contractual duties only when nonperformance is willful, grossly negligent, or fraudulent."  (*Id*. at p. 323.)  As an example of this "long-standing principle," the court cited Civil Code section 3275, which "excuses a failure to perform an 'obligation' " if the breaching party " 'mak[es] full compensation to the other party, except in case of a grossly negligent, willful, or

4

fraudulent breach of duty.' " (*Hohenshelt*, at pp. 332, 333, quoting Civ. Code, § 3275.)  The court also indicated that section 473, subdivision (b) was a "path by which a drafting party that does not timely pay fees can be relieved from forfeiting its right to arbitration." (*Hohenshelt*, at pp. 334-335.)  Under this statute, a court may relieve a party from an order under section 1281.98 that an employee or consumer is entitled to withdraw from arbitration where the order resulted from the party's " 'mistake, inadvertence, surprise, or excusable neglect.' " (*Hohenshelt*, at p. 334, quoting § 473, subd. (b).)

The court ultimately concluded that "section 1281.98, properly construed, is not preempted by the FAA." (*Hohenshelt, supra*, 18 Cal.5th at p. 323.)  The court stated, "We agree that if section 1281.98 were construed to mean that any failure to make timely payment, regardless of the circumstances, invariably results in forfeiture of arbitral rights, the statute would be anomalous in the context of general contract law principles.  As we have explained, however, a drafting party can avoid forfeiture of its right to arbitration by showing that the delay was excusable under . . . the background principles that generally apply to other contractual obligations." (*Hohenshelt*, at p. 343.)

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Parties and the Arbitration Agreement

Tseng alleges she worked for Hydrafacial and that she reported to Kim.

In connection with her employment, Tseng entered an arbitration agreement with Hydrafacial.  Under the agreement, Hydrafacial was required to "pay the arbitrator's fees and arbitration expenses."

5

**B.      Tseng Sues Appellants and the Parties Stipulate to Arbitrate**

On June 29, 2023, Tseng sued Hydrafacial and Kim asserting various claims related to her employment.

On August 11, 2023, the parties executed a joint stipulation to arbitrate Tseng's claims pursuant to their arbitration agreement.  On August 15, 2023, the trial court entered an order on the stipulation, compelling the parties to arbitrate; the court dismissed Tseng's complaint without prejudice.

**C.      Tseng Initiates Arbitration, an Arbitration Hearing is Scheduled, and the Arbitrator Issues an Invoice which Hydrafacial Pays Five Days Past the Section 1281.98 Deadline**

On August 22, 2023, Tseng filed a demand for arbitration with JAMS, Inc. (JAMS).

On September 8, 2023, Hydrafacial timely paid JAMS a retainer invoice for $1,600.  On October 11, 2023, Hydrafacial timely paid a second retainer invoice for $7,500.

The arbitration hearing was scheduled for January 27, 2025.

On September 30, 2024, JAMS issued a retainer invoice in the amount of $92,800 for the anticipated work of the arbitrator and a research attorney.  The invoice was addressed as payable by Hydrafacial's counsel and not Hydrafacial itself.  The invoice was due upon receipt, meaning the deadline to pay for purposes of section 1281.98 was October 30, 2024.

Also on September 30, 2024, the parties executed and submitted to the arbitrator a joint stipulation to continue the arbitration hearing to a date in May 2025.  The reason for the

6

continuance was to allow time for Tseng to conduct further discovery.

On October 10, 2024, counsel for Hydrafacial e-mailed JAMS staff to request they "withdraw" the $92,800 invoice in light of the parties' stipulation to continue the hearing or, alternatively, "continue [the] invoice until the [a]rbitrator has ruled on [the requested continuance]." On October 14, 2024, JAMS staff responded: "Yes, after your call with [the arbitrator] and new [a]rbitration dates are scheduled, our billing department will continue the [r]etainer to coincide with the new [a]rbitration dates." Tseng's counsel was not copied on this correspondence.

On October 15, 2024, the parties participated in a conference with the arbitrator, at which they discussed the requested continuance. The arbitrator indicated that she was not available in May 2025 and that the only other possible time that might work for all involved and was not too far into the future was in the second half of February 2025. The arbitrator proposed to put a "hold" on those dates and counsel would inform her at a call scheduled for October 24, 2024, whether the dates would work.

The following day, Hydrafacial's counsel e-mailed JAMS requesting confirmation that the $92,800 invoice "[was then] stayed as it relates to its payment deadline until there is a confirmation regarding the arbitration date." JAMS staff replied, "Yes, you are correct, the pending invoice is currently stayed as it relates to its payment deadline until there is a confirmation regarding the arbitration date. The current deadline is December 13th." Tseng's counsel was not copied on this correspondence.

7

On October 24, 2024, the parties participated in a conference with the arbitrator, during which the arbitrator indicated that the arbitration hearing would not be continued after all.  The arbitrator ruled that Tseng would be allowed to depose three individuals and a person most qualified from appellants but denied five other depositions Tseng had requested.

On October 25, 2024, JAMS sent an e-mail to the parties attaching the September 30, 2024 invoice for $92,800, and stating, "This is a friendly reminder that the attached [r]etainer for [a]rbitration fees is due on receipt.  The last day to continue or cancel the above mentioned [a]rbitration without forfeiting fees is December 13, 2024."  Minutes later, Hydrafacial's counsel replied to JAMS's October 16, 2024 e-mail asking for confirmation that "the invoice [was not] due until December 13th."  JAMS staff replied, "Correct.  The invoice is due upon receipt and the last day to continue or cancel the above-mentioned [a]rbitration without forfeiting fees is December 13, 2024."  Tseng's counsel was not copied on this correspondence.

On October 28, 2024, Hydrafacial's counsel sent an e-mail to JAMS staff stating, "Would you please re-issue the invoice and have it directed to . . . HydraFacial.  Our client is attempting to pay but they are not able to do so in the system since the invoice is not directed to them."  About an hour later, JAMS staff responded, "Kindly forward a contact name for HydraFacial with email address and mailing address.  Once received, we can generate a new [r]etainer."  About an hour after that, counsel provided the requested contact information.  The next morning, JAMS staff e-mailed Hydrafacial's counsel stating, "Received, thank you.  A revised [r]etainer will be sent out as soon as possible."  At 5:05 a.m. the following morning, October 30, 2024,

8

JAMS e-mailed to the parties another "[r]etainer" invoice for $92,800 which was identical to the September 30 invoice except it was addressed to Hydrafacial, was dated October 30, 2024, and had a new invoice number. At 11:45 a.m., Tseng's counsel responded by e-mail stating, "[Tseng] does not agree to the reissue of the invoice/extension of the due date." Later that day, JAMS sent a letter to the parties with the new invoice; the letter stated, "JAMS has received a request to reissue the invoice dated [September ]30[, ]2024. Enclosed is an invoice responsive to the request. Consistent with . . . [s]ections 1281.97-1281.87 the invoice dated [September ]30[, ]2024 was due upon receipt. The enclosed invoice is not intended to and does not extend the due date for payment of the [September ]30[, ]2024 invoice."

On October 30, 2024, Hydrafacial paid a separate JAMS invoice in the amount of $5,169.37. Tseng makes no claim this payment was untimely.

On November 4, 2024, Tseng's counsel e-mailed JAMS, with a copy to Hydrafacial's counsel, to inquire whether Hydrafacial had paid the $92,800 invoice and, if so, when it had made the payment. Minutes later, Hydrafacial's counsel responded, "A revised invoice was issued on October 30, 2024, as such payment is not due." Tseng's counsel e-mailed again, asking JAMS staff to respond and asking Hydrafacial's counsel to confirm the invoice had not been paid. Just over three hours later, JAMS staff replied indicating that its "billing department posted [Hydrafacial's] payment to their account today."

**D.** **Tseng Moves to Vacate the Trial Court's Order Compelling Arbitration on the Ground Appellants Failed to Timely Pay the Arbitration Fees**

On November 8, 2024, Tseng filed a motion pursuant to section 1281.98 to set aside the dismissal of her action and vacate the order compelling arbitration. Tseng adduced evidence that JAMS sent its invoice for $92,800 on September 30, 2024, and Hydrafacial failed to pay within 30 days as required by section 1281.98. Tseng contended that application of section 1281.98 was not discretionary and there were no exceptions, such as "for inadvertence, error, or neglect." Citing multiple cases, she further contended "[t]he Courts of Appeal have consistently ruled that [section] 1281.98 . . . must be strictly applied, without exception or excuse for clerical error, inadvertence, neglect, or a lack of prejudice to the employee." Tseng also contended that she did not agree to extend the payment due date. Tseng indicated she would bring a separate motion to recover her attorney's fees and costs "incurred as a result of the abandoned arbitration hearing."

**E.** **Hydrafacial and Kim Oppose the Motion**

Hydrafacial and Kim opposed the motion, contending that Tseng had agreed to extend the due date for payment of the JAMS invoice in the parties' stipulation to continue the arbitration hearing date, which sought a continuance of the hearing " 'and arbitration related deadlines.' " Hydrafacial and Kim adduced evidence, summarized above, of the parties' stipulation to continue the arbitration hearing, JAMS's confirmation that the invoice was " 'stayed . . . until there [was] a confirmation regarding the arbitration date,' " JAMS's issuance of a revised invoice on October 30, 2024, and Hydrafacial's payment

10

of the invoice on November 4, 2024.  They also argued, in the alternative, that the FAA preempted section 1281.98.  They pointed out that the Supreme Court had accepted review in *Hohenshelt* on the preemption issue.  Lastly, Hydrafacial and Kim contended that the parties' arbitration agreement provided that the FAA's procedural rules would govern instead of the CAA's procedural rules, including section 1281.98.

In reply, Tseng contended that in their stipulation to continue the arbitration hearing the parties only agreed to continue four specific deadlines referenced in the stipulation, which did not include the due date for payment of the arbitrator's invoice.  Tseng also pointed out that the arbitrator had rejected the requested continuance and that JAMS had clarified on October 30, 2024 that payment was due based on the date the invoice was initially issued, September 30, 2024.  In addition, Tseng contended that the FAA did not preempt section 1281.98 and the parties' arbitration agreement did not provide the FAA would govern to the exclusion of California law such as section 1281.98.

## F.    The Trial Court Grants Tseng's Motion to Return the Claims to Court

On January 23, 2025, the court granted Tseng's motion, concluding Tseng had not agreed to extend the payment due date, so payment of the invoice was due by October 30, 2024, and Hydrafacial was "a few days late, having paid it a few days into November."  The court stated, "These payment deadlines are rather strictly enforced.  So the motion to set aside and vacate the dismissal is granted."

Hydrafacial and Kim timely appealed the trial court's order, which is appealable under section 1294, subdivision (a).

11

(*Cvejic v. Skyview Capital, LLC* (2023) 92 Cal.App.5th 1073, 1077).

## DISCUSSION

**A.    Standard of Review**

In deciding whether to compel arbitration, "the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination." (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.)

"If the superior court's decision regarding arbitrability is based on resolution of disputed facts, we review the decision for substantial evidence." (*Baker v. Italian Maple Holdings, LLC* (2017) 13 Cal.App.5th 1152, 1158.)  In such a case " '[w]e must accept the trial court's resolution of disputed facts when supported by substantial evidence; we must presume the court found every fact and drew every permissible inference necessary to support its judgment, and defer to its determination of credibility of the witnesses and the weight of the evidence.' " (*Engineers & Architects Assn. v. Community Development Dept.* (1994) 30 Cal.App.4th 644, 653.)  But " 'where the trial court's denial of a petition to arbitrate presents a pure question of law, we review the order de novo.' " (*Mendez v. Mid-Wilshire Health Care Center* (2013) 220 Cal.App.4th 534, 541.)  Similarly, in reviewing a question of law involving contract interpretation with no extrinsic evidence, we apply a de novo standard of review. (*Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 161-162.)

**B.** **The FAA's Procedural Rules Do Not Apply to the Exclusion of Section 1281.98**

Appellants initially contend that section 1281.98 does not apply at all here. They claim the parties agreed that the FAA's procedural rules would apply to the exclusion of the CAA's rules, including section 1281.98. We disagree.

The key provision in the arbitration agreement states that claims subject to the agreement "shall be submitted to and determined exclusively by final, binding, private arbitration pursuant to the terms of this [a]greement, the [FAA], and all other applicable federal *and state laws (to the extent not preempted by the FAA).*" (Italics added.) This provision states that "state laws" apply to the arbitration "to the extent not preempted by the FAA." This clearly includes section 1281.98, which the *Hohenshelt* court concluded is not preempted by the FAA.

Appellants also ignore that, in accord with the arbitration agreement's reference to state law, the parties agreed in their joint stipulation to compel arbitration that California law would govern the payment of the arbitration fees and costs. The relevant provision states, "Pursuant to the terms of the [p]arties' [a]rbitration [a]greement, [Hydrafacial and Kim] will pay the fees and costs of arbitration as required by California law, and such fees and costs shall be paid in accordance with applicable California law."[3]

---

[3] Appellants also cite a provision in the "JAMS Employment Arbitration Rules & Procedures" attached to the arbitration agreement. This provision governs "[p]roceedings to enforce, confirm, modify or vacate" an arbitration award, not

13

## C. Appellants Have Not Forfeited Their Excuse Claim

Tseng contends appellants have forfeited their claim that Hydrafacial's breach of section 1281.98 should be excused under equitable principles because they did not present such an argument to the trial court. Tseng relies on the general principle that "issues not raised in the trial court cannot be raised for the first time on appeal." (*Wisner v. Dignity Health* (2022) 85 Cal.App.5th 35, 44.) As our Supreme Court has explained, " ' " ' "No procedural principle is more familiar to this Court than that a *constitutional* right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." ' " ' " (*Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 264.)

"There is an exception, however, in cases where a new point of law is decided after the trial[.]" (*In re Marriage of Moshcetta* (1994) 25 Cal.App.4th 1218, 1227; see *Fisher v. City of Berkeley* (1984) 37 Cal.3d 644, 654, fn. 3 ["It is well settled that a court will consider on appeal a new point of law decided while the appeal is pending"].) " 'A court may refuse to follow the doctrine [of not hearing new arguments on appeal] where, after trial, there is a change in judicially declared law which validates a theory that would have been rejected if presented under the case law as it existed at the time of trial.' " (*In re Marriage of*

---

whether a dispute should be compelled to arbitration, and has no relevance to appellants' preemption claim. Even if it had some relevance, the provision states that the proceedings are governed by "the [FAA] . . . *or applicable state law*" (italics added), and appellants misleadingly quote the provision to omit the reference to "applicable state law."

*Moshcetta*, at p. 1227, fn. 12; see *Guardianship of Stephen G.*
(1995) 40 Cal.App.4th 1418, 1422-1423 ["Courts have often
entertained new arguments on appeal when they rest on new
authority that the appellant could not fairly be expected to
anticipate"; citing cases].)  "Ultimately . . .—and within the
bounds of due process—application of the rule is discretionary
with the reviewing court."  (*In re Marriage of Moshcetta*, at
p. 1227.)

　　　We apply this exception here because at the time the trial
court decided Tseng's section 1281.98 motion *Hohenshelt* had not
yet been decided.  At the time the trial court decided the motion,
every Court of Appeal which had addressed whether a breach of
the timely payment requirement under section 1281.98 or the
analogous requirement under section 1281.97 (applicable to fees
and costs "to initiate an arbitration proceeding") could be excused
on equitable grounds had rejected such a theory.  (See, e.g.,
*Williams v. West Coast Hospitals, Inc.*, (2022) 86 Cal.App.5th
1054, 1074; *De Leon v. Juanita's Foods* (2022) 85 Cal.App.5th
740, 752-753; *Espinoza v. Superior Court* (2022) 83 Cal.App.5th
761, 775-778; *Gallo v. Wood Ranch USA Inc.* (2022) 81
Cal.App.5th 621, 644.[4])

　　　We decline to penalize appellants' counsel for failing to
foresee that the *Hohenshelt* court would overturn the
interpretation of section 1281.98 consistently adopted by the
Courts of Appeal and thereby avoid preemption concerns.
Although counsel was aware that the law regarding section
1281.98 might change because the Supreme Court had accepted

---

　　　[4] All of these cases are disapproved in *Hohenshelt*, *supra*,
18 Cal.5th at p. 349.

review in *Hohenshelt*, the court had declared only that it had accepted review to decide whether section 1281.98 was preempted by the FAA and, as appellants point out, they did raise such a preemption argument to the trial court.[5]

## D. Hydrafacial's Breach Was Excusable

Under *Hohenshelt*, "a drafting party cannot avoid discharging the other party's contractual duty to proceed in arbitration if it willfully withholds fees necessary to move arbitration forward. Conversely, if the drafting party acted in good faith, it may seek relief under [section 473, subdivision (b) or Civil Code sections 1511 or 3275], and its claim should be evaluated under the usual principles in law and equity governing relief from forfeiture or default, including whether the other party has been prejudiced." (*Hohenshelt*, *supra*, 18 Cal.5th at p. 344.) The court cited with approval five factors articulated by the Court of Appeal in *Magic Carpet Ride LLC v. Rugger Investment Group, L.L.C.* (2019) 41 Cal.App.5th 357, 365 as relevant to the determination whether a party has substantially complied with a contractual obligation: " '(1) "the extent to which the injured party will be deprived of the benefit which he reasonably expected"; (2) "the extent to which the injured party can be adequately compensated for the part of that benefit of

---

[5] Tseng also contends that, after *Hohenshelt* was decided, appellants should have sought reconsideration of the trial court's ruling under section 1008, subdivision (c), which permits reconsideration based on a "change of law." This argument fails because *Hohenshelt* was decided many months after the court's order, and subdivision (c) only permits the *court* to reconsider its prior order at such a late date based on a change in the law; it does not provide parties with the ability to seek such relief.

16

which he will be deprived"; (3) "the extent to which the party failing to perform or to offer to perform will suffer forfeiture"; (4) "the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances"; and (5) "the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing." ' " (*Hohenshelt*, at p. 344.)

The undisputed evidence already in the record establishes, as a matter of law, that appellants are entitled to relief under Civil Code section 3275 and the foregoing principles. (See *Wilson v. TAP Worldwide, LLC* (2025) 114 Cal.App.5th 1077, 1090 [concluding as a matter of law that "[the] defendant's untimely payment was [not] strategic, willful, grossly negligent, or fraudulent, the prerequisites for forfeiture of arbitral rights and abandonment of the arbitration as interpreted in *Hohenshelt*"].)[6] When the arbitrator's invoice was originally issued on September 30, 2024, Hydrafacial, Kim, and their counsel reasonably assumed that the payment date was going to change

___

[6] Tseng contends we should presume the trial court found that appellants were not entitled to equitable relief. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [a trial court's order " 'is *presumed correct*,' " and " '[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent' "].) Such a presumption is not warranted here because appellants did not argue for equitable relief as *Hohenshelt* had not yet been decided. Furthermore, at the hearing the trial court expressed its understanding that "[t]hese payment deadlines are rather strictly enforced," indicating it understood it did not have discretion to excuse Hydrafacial's breach on equitable grounds.

17

because the parties were requesting a continuance of the arbitration hearing. At a conference to discuss the requested continuance, the arbitrator indicated she would be willing to grant a continuance of about a month. JAMS then confirmed to appellants' counsel that it issued the invoice based on the existing arbitration hearing date and would "continue the [invoice] to coincide with the new [hearing date]."[7] It was not until October 24, 2024, six days before the deadline to pay under section 1281.98, that the arbitrator decided not to grant any continuance. At that point, Hydrafacial began the process of paying the invoice, encountered difficulty in making payment because the invoice was payable by its counsel instead of Hydrafacial, and then requested JAMS to reissue the invoice to show its name as opposed to its attorneys. Although counsel had received the invoice more than three weeks before and arguably should have realized earlier that there might be a problem with the format of the invoice, the failure to request a revised invoice earlier was not the product of gross negligence, willfulness, or fraud as opposed to a simple mistake that was not recognized until Hydrafacial attempted to pay the invoice as is and encountered difficulty doing so. JAMS reissued the invoice two

---

[7] The trial court found that Tseng did not agree to extend the payment deadline by stipulating to continue the arbitration hearing. We concur with Tseng that this finding is supported by substantial evidence. But even though Tseng herself did not agree to extend the payment deadline, appellants reasonably believed based on correspondence from the JAMS administrator that JAMS would withdraw the invoice in the event the arbitration hearing was continued and reissue it later based on the new hearing date, resulting in a new due date.

18

days after Hydrafacial's request to correct it on October 30, 2024, the date payment was due.  Hydrafacial paid the invoice five calendar days (and three business days) after that, on November 4, 2024, without any disruption to the arbitration proceeding.

Tseng contends that Hydrafacial acted willfully because it "knew for certain by the October 30, 2024 deadline, that the deadline had not been extended."  She further contends that on remand she might be able to adduce evidence that Hydrafacial had the ability to pay the invoice that day and intentionally chose not to do so.  Even assuming appellants' counsel understood that Hydrafacial's deadline to pay the invoice in compliance with section 1281.98 was October 30, and Hydrafacial had the ability to pay that day, there is no evidence that Hydrafacial's failure to pay until November 4 was "willful" in a manner precluding equitable relief because nothing suggested Hydrafacial was attempting to undermine the arbitration proceeding.  In *Hohenshelt*, the court held that equitable relief was unavailable where "[the] drafting party . . . willfully withholds fees *necessary to move arbitration forward*."  (*Hohenshelt*, *supra*, 18 Cal.5th at p. 344, italics added.)  The court also concluded that in enacting section 1281.98 "the Legislature was concerned about cases where *willful* nonpayment of fees by a defendant stymies the ability of employees and consumers to have their claims resolved in arbitration pursuant to a predispute arbitration agreement." (*Hohenshelt*, at p. 337.)  Nothing suggests Hydrafacial acted with any intention to disrupt the arbitration, and the delay in payment had no impact on the progress of the arbitration.  Furthermore, as appellants point out, they had actively participated in the arbitration up to that point and already paid three prior arbitration invoices.

19

Application of the factors articulated in *Magic Carpet* confirms that appellants are entitled to equitable relief here. As to the first and second factors, Tseng was not deprived of any " ' "benefit which [she] reasonably expected." ' " (*Hohenshelt*, *supra*, 18 Cal.5th at p. 344.) Tseng expected to be benefited by Hydrafacial paying for the arbitration and Tseng received that benefit when Hydrafacial made the payment and JAMS accepted it. In other words, Tseng was not prejudiced by Hydrafacial's delay in payment.[8] As to the third factor, Hydrafacial " ' "will

_____

[8] Tseng contends she was prejudiced because "[s]ome degree of prejudice is assumed for a violation of section 1281.98 because any breach is a material breach of [a] time is of the essence contract." We are not persuaded. Tseng relies on a passage from *Hohenshelt* where the court referred to the Legislature's "conclu[sion] that late payment *and the resulting delay in vindicating [the] plaintiffs' rights* can cause nonpecuniary harm in the form of 'extreme hardship' due to loss of 'livelihood.' " (*Hohenshelt*, *supra*, 18 Cal.5th at p. 343, italics added.) Such harm did not occur here because there was no delay in the arbitration.

Tseng also contends she "had to expend time and resources remaining vigilant to make sure JAMS maintained the payment deadline, including identifying the misdated October 30 invoice and objecting. She also had to expend attorney time meeting and conferring with Hydrafacial about their failure to timely pay invoices. And she had to expend the time and resources to draft, file, and argue her motion to return the case to the [s]uperior [c]ourt." We disagree that Tseng was prejudiced under the facts here simply because she decided to invoke section 1281.98 in an effort to have her case returned to court. Furthermore, even if Tseng was required to monitor the situation because Hydrafacial delayed in paying, she could be " 'adequately compensated' "

20

suffer forfeiture" ' " (*ibid*.) of its contractual arbitration rights unless it is granted equitable relief. As to the fourth factor, Hydrafacial had " ' "cure[d] [its] failure" ' " (*ibid*.) by making payment on November 4, 2024, before Tseng halted the arbitration. As to the fifth and final factor—whether Hydrafacial's " ' "behavior . . . comport[ed] with standards of good faith and fair dealing," ' "—there is no evidence that Hydrafacial took any action to derail the arbitration. Although its counsel initially espoused the questionable position that the payment date had been extended by the revised invoice, Hydrafacial did not insist on that position and instead paid the invoice later the same day.

Tseng contends that Hydrafacial acted "willfully" in delaying payment because its counsel argued at the hearing on Tseng's motion, "It does not make sense to make a $92,000 payment for an arbitration that has been moved out many, many months." But as already noted, willfulness in this context relates to conduct intended to deny an employee's ability to pursue relief through arbitration. At most, counsel's statement indicated that Hydrafacial did not want to pay the arbitration expenses any earlier than it had to, which makes sense from an economic standpoint. Tseng did not adduce any evidence or identify any facts she could develop on remand that (when weighed with the evidence already in the record) could show Hydrafacial intended to avoid its payment obligation or engaged in conduct which

_____

(*Hohenshelt*, *supra*, 18 Cal.5th at p. 344) for any expenses incurred to do so, and nothing in this opinion prevents her from seeking such compensation.

might have led the arbitrator to interrupt or halt the arbitration proceeding.

Tseng lastly contends that appellants cannot obtain relief under Civil Code section 3275 because the statute conditions relief "upon [the breaching party] making full compensation to the other party" and appellants "made no effort to compensate" her. This argument fails because the statute requires compensation as a condition for granting relief, not as a precondition to seeking relief. Nothing in this opinion prevents Tseng from seeking such compensation under section 1281.99, subdivision (a), which entitles her to recover her "reasonable expenses, including attorney's fees and costs, incurred . . . as a result of" Hydrafacial's breach. As the *Hohenshelt* court noted, section 1281.99, subdivision (a) essentially implements the "compensation requirement [in Civil Code section 3275]." (*Hohenshelt*, *supra*, 18 Cal.5th at p. 333.) We express no opinion on whether Tseng is entitled to recover any such expenses.

## DISPOSITION

We reverse the trial court's order vacating its prior order compelling arbitration.  The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED


WEINGART, J.


We concur:



ROTHSCHILD, P. J.



M. KIM, J.

23